AFFIDAVIT

I, Philip M. Christiana, being duly sworn, declare and state as follows:

Introduction

1. I am a Special Agent of the Federal Bureau of Investigation and have served in that capacity for approximately twenty-three (23) years. During that time, I have participated in numerous arrests and have investigated violations of Federal Law, to include Title 26 violations. I am currently assigned to the FBI Boston, Portsmouth, New Hampshire Resident Agency.

2. The following information is based on my observations during the course of this investigation and information supplied by other law enforcement agencies, including the Bureau of Alcohol, Tobacco, Firearms and Explosives (BATFE). The purpose of this affidavit is limited to showing that the warrantless arrest of DANIEL E. MUSSO, Sr. on January 27, 2016, was supported by probable cause and that probable cause exists to support the issuance of a criminal complaint charging MUSSO with violations of 26 U.S.C. § 5861(d). Accordingly, while this affidavit contains all the material information I am aware of with respect to the warrantless arrest and the requested criminal complaint, it does not include each and every fact known by me or other investigators concerning this investigation.

Investigation

3. In August 2015, the FBI received information that MUSSO, a resident of East Kingston, New Hampshire, provided a hand written list of ammunition and additional items he wished to purchase from a New Hampshire based Federal Firearms Licensee (FFL). MUSSO provided the list to the FFL in late July 2015. The list specified ten (10) different ammunition calibers and the quantities of each caliber MUSSO intended to acquire. The

Affidavit of Philip M. Christiana
January 27, 2016
Page 2 of 5

    FFL estimated the retail value of the ammunition at approximately $16,000. MUSSO's list also specified the following items: "Gas mask," "night/infrared system," "grinades" [sic], "C4," and "Rockets."

4. On November 8, 2015, MUSSO paid the FFL $6,000 in cash in the form of 60 $100 bills. MUSSO told the FFL to acquire the "available" items from the list he previously provided to the FFL.

5. On December 12, 2015, the FFL provided MUSSO with a substantial quantity of the ammunition on MUSSO's list. It included both rifle and handgun caliber ammunition. The FFL estimated that the ammunition had a retail value of approximately $2,800. During this transaction, at the FFL's request, MUSSO wrote on the back of his original order the items he intended to acquire with the balance of his $6,000 payment. MUSSO wrote: "Gas Mask 3," "22mag-," "7-mm mag.-," "17-SWM," "50 Cal.," and "Granedes – 6 [sic]." MUSSO discussed with the FFL the remaining items he intended to acquire and referred to the grenades as "special things" and hand grenades. When questioned by the FFL about what type of grenades he wanted, MUSSO stated, "the best you have." This transaction and the FFL's conversation with MUSSO were captured in a video and audio recording, which I have viewed.

6. On January 6, 2016, Special Agent John Forte of the BATFE advised me that MUSSO is not listed in the BATFE licensing database as having been issued a Federal Firearms or Explosive License.

7. On January 15, 2016, during a consensually recorded meeting with the FFL, MUSSO reiterated his intent to acquire hand grenades and asked the FFL to arrange a meeting with an

Affidavit of Philip M. Christiana
January 27, 2016
Page 3 of 5

    individual known to the FFL who had grenades for sale. At my direction, the FFL later sent an email to MUSSO advising him that he set up a meeting with the associate on January 22, 2016, in New Hampshire. The associate was actually an FBI Special Agent working in an undercover capacity (UC).

8.     On January 22, 2016, MUSSO was captured in video and audio recordings meeting with the UC. I have viewed the video and audio recording. During their meeting, the UC showed MUSSO photos of fragmentary grenades and MUSSO said he wanted to purchase six (6) of them. MUSSO and the UC negotiated a price of $150 per grenade with the understanding that the UC would be paid out the balance of MUSSO's funds being held by the FFL. MUSSO also said he was interested in acquiring additional grenades and asked the UC about "rocket type stuff." MUSSO told the UC that he could sell large quantities of grenades. MUSSO explained that he belongs to a group of people bringing forth "the original constitution" and stated his concern about the government discovering the group's efforts. He added, "That is why I need some of this stuff." MUSSO also asked the UC to check on the price of C-4 explosive. MUSSO said that he had been looking for a "source" for a while. He told the UC that $100,000 to $200,000 in cash was available to buy what "we" need. MUSSO agreed to meet with the UC in Seabrook, New Hampshire, the following week, to acquire the six (6) grenades. MUSSO provided the UC with an email address through which the UC could contact him to confirm the time and date of the transaction, but told the UC that his preference was to limit email communication.

9.     On January 25, 2016 at 4:26 PM, the UC sent MUSSO an email asking MUSSO if was he was able to meet at 11:30 AM on Wednesday (January 27, 2016) to pick up Auto Parts

and Tools. At 9:38 PM that evening, MUSSO sent the UC a responsive email stating, "Super."

10. At about 11:30 AM today, January 27, 2016, MUSSO and the UC met at a location in Seabrook, New Hampshire, so MUSSO could take delivery of the grenades. Other FBI agents and I conducted surveillance of the meeting and observed the transaction that transpired between the MUSSO and the UC. A video and audio recording was also made of their meeting. The UC turned over a bag containing four (4) grenades to MUSSO. MUSSO took possession of the bag and started to walk toward his car. At that point FBI agents and other law enforcement officers executed his arrest.

## Relevant Statute

11. Title 26, United States Code, Section 5861(d) provides, in pertinent part, that it is unlawful for any person to "receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." Under Title 26, United States Code, Sections 5845(a)(8) and (f)(1)(B), a grenade is defined as firearm that must be registered in the National Firearms Registration and Transfer Record.

## Conclusion

12. Based on the information in this Affidavit, there is probable cause to believe that DANIEL E. MUSSO, Sr. illegally received and possessed a grenade that was not registered to him in National Firearms Registration and Transfer Record. Accordingly, I request that this Honorable Court issue a Criminal Complaint against DANIEL E. MUSSO, Sr. charging him with violating of Title 26, United States Code, Section 5861(d).

Affidavit of Philip M. Christiana
January 27, 2016
Page 5 of 5

/s/ Philip M. Christiana
Philip M. Christiana, Special Agent
Federal Bureau of Investigation

Sworn and subscribed to before me this 27th day of January, 2016, at Concord, New Hampshire.

/s/ Andrea K. Johnstone
Andrea K. Johnstone
United States Magistrate Judge