# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

2019 APR 15 ⊡ 1: 39

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>v. )<br><br>DANIEL E. MUSSO, SR. )<br> | No. 1:16-cr-00033-JD |

## PLEA AGREEMENT

Pursuant to Rules 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, the United States of America, by Scott W. Murray, United States Attorney for the District of New Hampshire, and the defendant, Daniel E. Musso, Sr., and the defendant's attorney, Penny S. Dean, Esquire, enter into the following Plea Agreement:

1. <u>The Plea and The Offense</u>.

The defendant agrees to plead guilty to Count One of the Superseding Indictment that charges him with receiving an unregistered firearm, in violation of 26 U.S.C. § 5861(d).

In exchange for the defendant's guilty plea, the United States agrees to the sentencing stipulations identified in Section 6 of this agreement. The United States also agrees to move to dismiss Counts Two, Three, Four, and Five when the defendant is sentenced.

2. <u>The Statute and Elements of the Offense</u>.

Title 26, United States Code, Section 5861(d) provides, in pertinent part:

It shall be unlawful for any person . . . to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record

26 U.S.C. § 5861(d). Title 26, United States Code, Section 5845(a) provides, in pertinent part, that "[f]or the purpose of this chapter . . . [t]he term 'firearm' means . . . a destructive device." 26 U.S.C. § 5845(a)(8). Title 26, United States Code, Section 5845(f) provides, in pertinent

- 1 -

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

UNITED STATES OF AMERICA

v.

DANIEL R. MUSSO, SR.

)
)
)
)
)
)

No. 1:16-cr-00033-JD

## PLEA AGREEMENT

Pursuant to Rules 11(c)(1)(A) and (B) of the Federal Rules of Criminal Procedure, the United States of America, by Scott W. Murray, United States Attorney, for the District of New Hampshire, and the defendant, Daniel R. Musso, Sr., and the defendant's attorney, Penny S. Dean, Esquire, enter into the following Plea Agreement:

### 1.    The Plea and The Offense.

The defendant agrees to plead guilty to Count One of the Superseding Indictment that charges him with receiving an unregistered firearm, in violation of 26 U.S.C. § 5861(d).

In exchange for the defendant's guilty plea, the United States agrees to the sentencing stipulations identified in Section 6 of this agreement.  The United States also agrees to move to dismiss Counts Two, Three, Four, and Five when the defendant is sentenced.

### 2.    The Statute and Elements of the Offense.

Title 26, United States Code, Section 5861(d) provides, in pertinent part:

It shall be unlawful for any person . . . to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record

26 U.S.C. § 5861(d).    Title 26, United States Code, Section 5845(a) provides, in pertinent part, that "[f]or the purpose of this chapter . . . [the] term 'firearm' means . . . a destructive device."

26 U.S.C. § 5845(a)(8)    Title 26, United States Code, Section 5845(f) provides, in pertinent

- 1 -

part, that "[t]he term 'destructive device' means . . . any explosive . . . grenade . . . ."   26 U.S.C.
§ 5845(f)(1)(B).

The defendant understands that the offense has the following elements, each of which the
United States would be required to prove beyond a reasonable doubt at trial:

First:       That the defendant knowingly received or possessed the firearm described
             in the indictment on about January 27, 2016;

Second:      That the firearm was an explosive grenade.

Third:       That the defendant knew that the firearm was an explosive grenade; and

Fourth:      That the firearm was not registered to the Defendant in the National
             Firearms Registration and Transfer Record.

Pattern Criminal Jury Instructions For The District Courts Of The First Circuit § 4.26.5861(d), updated
June 26, 2018, available at https://www.med.uscourts.gov/pdf/crpjilinks.pdf; United States v. Musso,
914 F.3d 26, 28–29, 31-32 (1st Cir. 2019).

3. Offense Conduct.

The defendant stipulates and agrees that if this case proceeded to trial, the government
would introduce evidence of the following facts, which would prove the elements of the offense
beyond a reasonable doubt:

In approximately July 2015, the defendant met with the owner of a firearms store in
Chichester, New Hampshire. During the meeting, the defendant provided the store owner with a
handwritten list of items he wanted to purchase, including a large quantity of rifle and handgun
ammunition and "ginades" [sic].   On November 8, 2015, the defendant paid the store owner
$6,000 in cash to acquire available items from the list he had previously provided.

On December 12, 2015, in a recorded meeting, the store owner provided the defendant
some of the ammunition from his list, using about $2,800 of the defendant's $6,000 deposit.   At
the request of the store owner, the defendant wrote on the back of his original list six items he

part, that "[t]he term 'destructive device' means ... any explosive ... grenade ...." 26 U.S.C.

§ 5845(f)(1)(B).

The defendant understands that the offense has the following elements, each of which the

United States would be required to prove beyond a reasonable doubt at trial:

| | |
|---|---|
| First: | That the defendant knowingly received or possessed the firearm described in the Indictment on or about January 27, 2016; |
| Second: | That the firearm was an explosive grenade; |
| Third: | That the defendant knew that the firearm was an explosive grenade; and |
| Fourth: | That the firearm was not registered to the Defendant in the National Firearms Registration and Transfer Record. |

Pattern Criminal Jury Instructions For The District Courts Of The First Circuit 4.26.5861(d), updated June 26, 2018, available at https://www.med.uscourts.gov/pdf/crpjilinks.pdf; United States v. Musso, 914 F.3d 26, 28-29, 31-32 (1st Cir. 2019).

3. Offense Conduct.

The defendant stipulates and agrees that if this case proceeded to trial, the government

would introduce evidence of the following facts, which would prove the elements of the offense

beyond a reasonable doubt:

In approximately July 2015, the defendant met with the owner of a firearms store in

Chichester, New Hampshire. During the meeting, the defendant provided the store owner with a

handwritten list of items he wanted to purchase, including a large quantity of rifle and handgun

ammunition and "granades" [sic].   On November 8, 2015, the defendant paid the store owner

$6,000 in cash to acquire available items from the list he had previously provided.

On December 12, 2015, in a recorded meeting, the store owner provided the defendant

some of the ammunition from his list, using about $2,800 of the defendant's $6,000 deposit.  At

the request of the store owner, the defendant wrote on the back of his original list six items he

wished to acquire with the balance of his $6,000 deposit. One of the items listed was "Granedes – 6" [sic]. When the store owner asked the defendant to tell him what he wanted, the defendant said he wanted "half a dozen of them special things." Then, to clarify, he said, "hand grenades." The store owner said he would see what he could do about the hand grenades and that he could talk to an army buddy.

On January 15, 2016, during another recorded meeting with the store owner, the defendant discussed how he could get the hand grenades. The store owner told the defendant that "the guy has them, I can introduce you to him" but that he "can't do it here because of what it is." He and the defendant agreed that the store owner would "set up a meeting."

On January 22, 2016, the defendant met at the firearms store with an undercover FBI agent posing as an illegal weapons dealer. During the meeting, the defendant asked the undercover agent, "Did he tell you what I'm looking for?" To confirm the defendant's order, the undercover agent showed the defendant color photographs of M67 military fragmentation grenades and said, "those are frags." He then asked the defendant how many he wanted. The defendant replied "half a dozen of them." The defendant and undercover agent negotiated a price of $150 per grenade or $900 for six grenades.

The defendant provided the undercover agent with his email address and agreed to meet Wednesday, January 27, 2016, in the late morning at the Seabrook, New Hampshire rest area to pick up his order.

On January 27, 2016, the defendant met the undercover agent at the Seabrook, New Hampshire rest stop. The undercover agent told the defendant that he had only four grenades, not six as previously agreed. They agreed on a price of $600 for the four grenades and the

- 3 -

wished to acquire with the balance of his $6,000 deposit. One of the items listed was "Grenades - 6." [sic]. When the store owner asked the defendant to tell him what he wanted, the defendant said he wanted "half a dozen of them special things." Then, to clarify, he said, "Hand grenades." The store owner said he would see what he could do about the hand grenades and that he could talk to an army buddy.

On January 15, 2016, during another recorded meeting with the store owner, the defendant discussed how he could get the hand grenades. The store owner told the defendant that "the guy has them, I can introduce you to him," but that he "can't do it here because of what it is." He said the defendant agreed that the store owner would "set up a meeting."

On January 22, 2016, the defendant met at the firearms store with an undercover FBI agent posing as an illegal weapons dealer. During the meeting, the defendant asked the undercover agent, "Did he tell you what I'm looking for?" To confirm the defendant's order, the undercover agent showed the defendant color photographs of M67 military fragmentation grenades and said, "those are flags." He then asked the defendant how many he wanted. The defendant replied "half a dozen of them." The defendant and undercover agent negotiated a price of $150 per grenade or $900 for six grenades.

The defendant provided the undercover agent with his email address and agreed to meet Wednesday, January 27, 2016, in the late morning at the Seabrook, New Hampshire rest area to pick up his order.

On January 27, 2016, the defendant met the undercover agent at the Seabrook, New Hampshire rest stop. The undercover agent told the defendant that he had only four grenades, not six as previously agreed. They agreed on a price of $600 for the four grenades and the

undercover agent said that he would provide the defendant with the two remaining grenades at a later date.   The undercover agent showed the defendant one of the four M67 military fragmentation grenades and showed the defendant how it worked and that there were four of them.   The defendant then took a bag that contained all four M67 fragmentation grenades. After the transaction, as he was walking back to his car with the grenades, the FBI arrested the defendant.

The FBI obtained each of the four M67 fragmentation grenades the defendant received from the Marine Corps in Quantico, Virginia.   Each M67 grenade was manufactured for use by soldiers in combat.   Each grenade received by the defendant contained Composition B high explosive and was fitted with an inoperable fuze.   Each grenade the defendant received remained armed with its original explosive charge of Composition B and could be made to explode by, for example, replacing the inoperable fuze with an operable one, by using a commercial or homemade detonator, or by a sufficient impact.   None of the grenades was registered to the defendant in the National Firearms Registration and Transfer Record.

4.   Penalties, Special Assessment and Restitution.

The defendant understands that the penalties for the offense are:

A.   A maximum prison term of 10 years (26 U.S.C. § 5871);

B.   A maximum fine of $10,000 (26 U.S.C. § 5871);

C.   A term of supervised release of not more than three years (18 U.S.C. §§ 3559(a)(3), 3583(b)(2)). The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release; and

D.   A mandatory special assessment of $100 for each count of conviction, at or before

- 4 -

the time of sentencing (18 U.S.C. § 3013(a)(2)(A)).

In addition to the other penalties provided by law, the Court may order him to pay restitution to the victim(s) of the offense (18 U.S.C. § 3663 or § 3663A).

5. <u>Sentencing and Application of the Sentencing Guidelines</u>.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that he has no right to withdraw from this Plea Agreement if the applicable advisory guideline range or his sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation Office shall:

A. Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

B. Respond to questions from the Court;

C. Correct any inaccuracies in the pre-sentence report;

D. Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise as to the actual sentencing range under the advisory Sentencing Guidelines that the Court will adopt.

6. <u>Sentencing Stipulations and Agreements</u>.

Pursuant to Fed. R. Crim. 11(c)(1)(B), the United States and the defendant stipulate and agree to the following:

> (a)    The United States will recommend that the defendant be sentenced within the applicable advisory sentencing guidelines range as determined by the Court;
>
> (b)    The United States will not seek an upward departure or variance; and
>
> (c)    If the defendant continues to comply with his conditions of release after entering his guilty plea, the United States will not oppose the defendant being permitted to self-surrender to the Bureau of Prisons after imposition of sentence.

The defendant understands that the Court is not bound by the foregoing agreements and, with the aid of a pre-sentence report, the court will determine the facts relevant to sentencing. The defendant also understands that if the Court does not accept any or all of those agreements, such rejection by the Court will not be a basis for the defendant to withdraw his guilty plea.

The defendant understands and agrees that the United States may argue that other sentencing enhancements should be applied in determining the advisory guideline range in this case, and he is permitted to object to them.

The United States and the defendant are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea

Agreement.

7. Acceptance of Responsibility.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

A.   Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

B.   Challenges the United States' offer of proof at any time after the plea is entered;

C.   Denies involvement in the offense;

D.   Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E.   Fails to give complete and accurate information about his financial status to the Probation Office;

F.   Obstructs or attempts to obstruct justice, prior to sentencing;

G.   Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H.   Fails to appear in court as required;

I.   After signing this Plea Agreement, engages in additional criminal conduct; or

J.   Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any

- 7 -

Agreement.

7.  Acceptance of Responsibility.

The United States agrees that it will not oppose an appropriate reduction in the

defendant's adjusted offense level  under the advisory Sentencing Guidelines, based upon the

defendant's apparent prompt recognition and affirmative acceptance of personal responsibility

for the offense. The United States, however, may oppose any adjustment for acceptance of

responsibility if the defendant:

A.  Fails to admit a complete factual basis for the plea at the time he is
sentenced or at any other time;

B.  Challenges the United States' offer of proof at any time after the plea is
entered;

C.  Denies involvement in the offense;

D.  Gives conflicting statements about his involvement or is untruthful with
the Court, the United States or the Probation Office;

E.  Fails to give complete and accurate information about his financial status
to the Probation Office;

F.  Obstructs or attempts to obstruct justice, prior to sentencing;

G.  Has engaged in conduct prior to signing this Plea Agreement which
reasonably could be viewed as obstruction or an attempt to obstruct
justice, and has failed to fully disclose such conduct to the United States
prior to signing this Plea Agreement;

H.  Fails to appear in court as required;

I.  After signing this Plea Agreement, engages in additional criminal conduct;
or

J.  Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any

- 7 -

of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

8.   Waiver of Trial Rights and Consequences of Plea.

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.   The defendant also understands that he has the right:

A.     To plead not guilty or to maintain that plea if it has already been made;

B.     To be tried by a jury and, at that trial, to the assistance of counsel;

C.     To confront and cross-examine witnesses;

D.     Not to be compelled to provide testimony that may incriminate him; and

E.     To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of the his guilty plea, he will not be entitled to a trial.

- 8 -

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

9.   Acknowledgment of Guilt; Voluntariness of Plea.

The defendant understands and acknowledges that he:

A.   Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

B.   Is entering into this Plea Agreement without reliance upon any promise or benefit of any kind except as set forth in this Plea Agreement or revealed to the Court;

C.   Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D.   Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E.   Is completely satisfied with the representation and advice received from his undersigned attorney.

10.   Scope of Agreement.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea. The defendant understands such matters are solely within the discretion of the specific non-party government agency involved. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

- 9 -

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

9. **Acknowledgment of Guilt; Voluntariness of Plea.**

The defendant understands and acknowledges that he:

    A.    Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

    B.    Is entering into this Plea Agreement without reliance upon any promise or benefit of any kind except as set forth in this Plea Agreement or revealed to the Court;

    C.    Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

    D.    Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

    E.    Is completely satisfied with the representation and advice received from his undersigned attorney.

10. **Scope of Agreement.**

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to him about any civil or administrative consequence that may result from his guilty plea. The defendant understands such matters are solely within the discretion of the specific non-party government agency involved. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11. <u>Collateral Consequences</u>.

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

The defendant understands that, if he is not a citizen of the United States, his guilty plea to the charged offense will likely result in him being subject to immigration proceedings and removed from the United States by making him deportable, excludable, or inadmissible. The defendant also understands that if he is a naturalized citizen, his guilty plea may result in ending his naturalization, which would likely subject him to immigration proceedings and possible removal from the United States. The defendant understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. The defendant wants and agrees to plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause his removal from the United States. The defendant understands that he is bound by his guilty plea regardless of any immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on any immigration consequences, and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

12. <u>Satisfaction of Federal Criminal Liability; Breach</u>.

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the indictment in this case. The defendant understands that if, before sentencing, he

violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to appear for sentencing, the United States may consider such conduct to be a breach of the Plea Agreement and may withdraw therefrom.

13.   <u>Waivers</u>.

A.   Appeal.

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1.   His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2.   The sentence imposed by the Court if it is within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B.   Collateral Review

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255.   By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1.   His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions

- 11 -

violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails

to appear for sentencing, the United States may, consider such conduct to be a breach of the Plea

Agreement and may withdraw therefrom.

13.  *Waivers.*

A.  Appeal.

The defendant understands that he has the right to challenge his guilty plea and/or

sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and

voluntarily waives his right to challenge on direct appeal:

 1. His guilty plea and any other aspect of his conviction, including, but not
limited to, adverse rulings on pretrial suppression motion(s) or any other
adverse disposition of pretrial motion, or issues, or claims challenging the
constitutionality of the statute of conviction; and

 2. The sentence imposed by the Court if it is within, or lower than, the
guideline range determined by the Court, or if it is imposed pursuant to a
minimum mandatory sentence.

The defendant's waiver of his rights does not operate to waive an appeal based upon new

legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea

Agreement that have retroactive effect, or on the ground of ineffective assistance of counsel.

B.  Collateral Review

The defendant understands that he may have the right to challenge his guilty plea and/or

sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255.  By

entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to

collaterally challenge:

 1. His guilty plea, except as provided below, and any other aspect of his
conviction, including, but not limited to, adverse rulings on pretrial
suppression motion(s) or any other adverse disposition of pretrial motions

- 11 -

or issues, or claims challenging the constitutionality of the statute of conviction; and

2.   The sentence imposed by the Court if it is within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C. Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant 18 U.S.C. § 3742(b) to pursue an appeal as authorized by law.

14.   <u>No Other Promises</u>.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

15.   <u>Final Binding Agreement</u>.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

or issues, or claims challenging the constitutionality of the statute of conviction; and

2.    The sentence imposed by the Court, if it is within or lower than the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C.    Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant 18 U.S.C. § 3742(b) to pursue an appeal as authorized by law.

14.    No Other Promises

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

15.    Final Binding Agreement

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney, and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

- 12 -

16.  Agreement Provisions Not Severable.

The United States and the defendant understand and agree that if any provision of this

Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and

void and no part of it may be enforced.

Date: 4/15/2019

SCOTT W. MURRAY
United States Attorney

By: _____

John S. Davis
Assistant United States Attorney
Bar Association #  592 (NH)

Matthew T. Hunter
Special Assistant United States Attorney
Bar Association #  682921 (MA)

53 Pleasant St., 4th Floor
Concord, NH 03301
John.Davis8@usdoj.gov
Matthew.Hunter@usdoj.gov

The defendant, Daniel E. Musso, Sr., certifies that he has read this 13-page Plea
Agreement and that he fully understands and accepts its terms.

Date: 4/10/2019

_____
Daniel E. Musso, Sr., Defendant

I have read and explained this 13-page Plea Agreement to the defendant, and he has
advised me that he understands and accepts its terms.

Date: 4 -12-19

_____
Penny S. Dean, Esquire
Attorney for Daniel E. Musso, Sr.

- 13 -