UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Docket No.: 1:16-CR-33-JD |
| : | |
| DANIEL E. MUSSO : | |

**DEFENDANT'S RULE 29 MOTION FOR JUDGMENT OF ACQUITTAL**

Defendant Daniel Musso, by his attorneys, Preti Flaherty PLLP, respectfully submits the within Motion for Judgment of Acquittal pursuant to Fed. R. Crim. P. 29. In support of this Motion, Defendant states as follows:

**I.    FACTUAL BACKGROUND**

1. Defendant Daniel Musso was tried on four counts of Receiving An Unregistered Firearm in violation of 26 U.S.C. § 5861(d) and one count of Receiving Explosive Materials in violation of 18 U.S.C. § 842 (a)(3)(A). Trial was held August 10-14, 2020.

2. On the evening of August 14, 2020, the jury returned a verdict of guilty on all counts.

3. Under Federal Rule of Criminal Procedure 29, Mr. Musso now moves for a judgment of acquittal.

**II.    LEGAL STANDARD**

4. The Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "[A] defendant may move for a judgment of acquittal…within fourteen days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1).

### III. ARGUMENT

**A. The evidence was insufficient to sustain convictions on all counts requiring proof that Mr. Musso knew he was receiving explosive grenades or explosive materials.**

5. Under the Court's Jury Instructions, the Jury was required to find beyond a reasonable doubt that Mr. Musso "knew that (each) firearm was an explosive grenade" (Counts 1-4), and that he "knowingly received explosive materials" (Count 5). The evidence was insufficient to establish this *mens rea* and, thus, a judgment of acquittal is required on all counts.

6. The testimony of the FBI informant as well as the recordings depicting the informant's conversations with Mr. Musso on December 12, 2015 and January 15, 2016 failed to demonstrate that Musso was knowingly arranging to buy "real" explosive grenades. When discussing grenades on December 12, 2015, Musso's son David clarified with the informant that they were referring to "the law enforcement ones you talked about the other week." At trial, the informant acknowledged that law enforcement grenades, unlike fragmentary grenades, are non-lethal (and, thus, non-explosive).

7. Fragmentary grenades were not discussed on December 12, and the informant acknowledged that he and Musso had never before discussed fragmentary grenades, a fact supported by the informant's own handwritten notes referring to "10 CS/non-lethal." *See* Government's Exhibit 104.

8. In the January 15, 2016 recorded conversation between the informant and Musso, they never discussed the purchase of fragmentary grenades. The informant referred to grenades that his contact had access to as "specials" but never used the word "fragmentary" or made clear in the recording that he was talking about real grenades. The informant testified that he assumed Musso knew "specials" meant fragmentary grenades because he assumed Musso had a military

background, which was not true. A subsequent witness, David Musso, testified that in his long military career, he had never heard of fragmentary grenades being referred to as "specials."

9. This lack of evidence as to Musso's knowledge and intent was never remedied. The recordings on January 22, 2016 and January 27, 2016 – the date of Mr. Musso's arrest – failed to supply the further evidence necessary to establish beyond a reasonable doubt that he knew he was buying explosive grenades.

10. The undercover agent testified, in fact, that he did not know Musso's background, or that Musso had never been in the military. He also did not know anything about Musso's educational background, cognitive abilities, or hearing deficit. He met with Musso for about 17 minutes, briefly displayed (but kept) photographs depicting fragmentary grenades, and almost immediately resorted to "code talk" rather than plainly informing Musso that he was trying to sell him real grenades.

11. Musso's post-arrest statements introduced by the Government showed and confirmed the deficiency of its *mens rea* evidence. Consistent with the prior recordings, Musso told the FBI he did not know he was receiving real grenades.

12. Based on all of this evidence introduced at trial, the Government's evidence was insufficient to prove the necessary element of knowledge. Accordingly, judgments of acquittal should be entered on all counts.

### B. The Chain of Custody evidence was so lacking that a Jury should not have concluded that Mr. Musso received explosive grenades.

13. The court gave the Jury a Chain of Custody instruction which stated, in part, that "[i]t is up to you to determine whether the items are what they purport to be and that they contained explosive materials when exchanged with Mr. Musso."

14.     The Jury had insufficient evidence to conclude that the grenades received by Musso contained explosive material at that time.

15.     <u>First</u>, the FBI did not forensically confirm that the grenades in question contained explosive material *before* transferring them to Musso in January 2016.  <u>Second</u>, the FBI's chain of custody documentation for the grenades was severely lacking.  An original form documenting chain of custody was lost and re-created over a year later and, even then, numerous transfers of the grenades were inadequately documented  <u>Third</u>, the FBI's casual handling of the allegedly explosive grenades (i.e., leaving them in an FBI truck in a residential area at least twice overnight; placing them in the trunk of a rental car driven by agents on public ways with no other safeguards; conducting the transfer of the grenades to Musso in a busy Welcome Center with no control over the public's movements) belied a reasonable conclusion that they contained explosives at that time.  <u>Fourth</u>, inexplicably, the FBI did not weigh the grenades for more than 2 years after Musso's arrest and did not test the grenades for the presence of explosives for over 3 years after his arrest.  <u>Fifth</u>, all of the grenades presented at trial, with fuses, almost certainly weighed more than a standard M-67 fragmentary grenade with fuse attached.  And <u>sixth</u>, photographs of the inert fuses taken at the time of arrest were inconsistent in appearance with the actual fuses presented at trial (i.e., all fuses at trial displayed a blue stripe on one side; no photograph taken at arrest and introduced at trial showed more than *one* fuse displaying a blue stripe).

16.     For all of these reasons, a reasonable jury should not have returned verdicts of guilty.  On this record, there was a reasonable doubt as to whether the grenades in question contained explosives when given to Mr. Musso in January 2016.

15975382.1

### IV. CONCLUSION

17. For the foregoing reasons, judgment of acquittal on all counts should be ordered.

18. No Memorandum of Law is submitted as all arguments are contained herein.

WHEREFORE, for the reasons set forth above, Defendant Daniel E. Musso respectfully requests this Honorable Court to:

A. Grant this Motion and enter a judgment of acquittal pursuant to Fed. R. Crim. P. 29; and

B. Grant such other relief as may be just and proper.

                Respectfully submitted,

                DANIEL E. MUSSO

                By his attorneys,

                PRETI FLAHERTY PLLP

Date: August 28, 2020        By: /s/ *Simon R. Brown*
                Simon R. Brown, NH Bar #9279
                Preti Flaherty PLLP
                P.O. Box 1318
                Concord, NH 03302-1318
                (603) 410-1555
                sbrown@preti.com

### CERTIFICATE OF SERVICE

I hereby certify this 28th day of August 2020 copies of the foregoing *Rule 29 Motion for Judgment of Acquittal* have been forwarded to all parties of record electronically via ECF.

                /s/ *Simon R. Brown*
                Simon R. Brown, NH Bar #9279

15975382.1